**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD LANE and MARIE LANE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: 14-cv-1715 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| MONEY MASTERS, INC., | ) | |
| FREDERICK W. ROEHM, | ) | |
| and KERRY LABANT, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Richard and Marie Lane filed this complaint against Defendants Money Masters, Inc., Frederick W. Roehm, and Kerry LaBant, alleging securities fraud under federal and Illinois law (15 U.S.C. § 78j, 17 C.F.R. § 240.10b-5, and 815 ILCS 5/12), fraud, breach of fiduciary duty, civil conspiracy, and negligence, and unsuitability. Before the Court are LaBant's [14] as well as Roehm and Money Masters's [17] motions to dismiss. For the reasons stated below, the Court grants Defendants' motions to dismiss [14, 17] with respect to Counts IV and VI. Defendants' motions are denied with respect to all other counts. Plaintiffs are given until 2/12/2015 to file an amended complaint if they so desire. This case is set for further status hearing on 1/29/2015 at 9:00 a.m. The parties are directed to file a revised joint status report, including a proposed discovery plan, by 1/26/2015.

## I.    Background[1]

The amended complaint alleges a fraud targeting Richard and Marie Lane—a fraud that promised to turn their retirement savings of $250,000 into $1.25 million within forty-five days

---

[1] For the purposes of Defendant's motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the amended complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

and instead left them with $15,000. The amended complaint tells a story that begins with Frederick Roehm, the Lanes' financial adviser of almost twenty years. While working at Money Masters, Inc., Roehm cultivated a business relationship with his alleged co-conspirators, Stephen Fortman and Kerry LaBant. Fortman was the president of Explicit Growth Strategies Consultants, Inc. ("EGSC"), and Kerry LaBant allegedly secured investments for him. According to Plaintiffs, Roehm, Fortman, and LaBant jointly planned to defraud Plaintiffs of their savings through an investment in EGSC.

As the Lanes' long-term financial advisor, Roehm first approached the Lanes about the investment in EGSC. He falsely represented that it had the potential for an "enormous return" with "little to no risk." FAC at ¶21. Trusting him, the Lanes agreed to meet with LaBant, who then explained that EGSC raised capital for projects in real estate financing, marketing, and consulting. To induce Plaintiffs to invest in EGSC, LaBant falsely stated that the Lanes had the option to secure their investment in EGSC with a third-party guaranty through Sharpe Resources Corporation. He further stated that the investment offered a high potential return and involved little risk because the investment sum would be held in an escrow account.

Roehm and Labant then introduced the Lanes to Fortman, the president of EGSC. Fortman sent the Lanes a letter explaining that EGSC would use their investment to pay for "due diligence, administrative fees, legal fees, cost to reserve bank instrument, bank undertaking and the opening of a credit line facility, which will be leveraged to provide project funding and appropriate the return to the Investor." FAC, Ex. A. He falsely stated that an investment of $250,000 would yield a return of $500,000 within forty-five days, or $1.25 million if they chose to forgo a $300,000 guaranty by Sharpe Resources Corporation. FAC, Ex. A. He further stated

that there would be little to no risk involved and that the investment funds would be returned promptly if EGSC were unable to provide Plaintiffs the promised return.

On August 19, 2011, the Lanes signed the investment agreement and agreed to waive the third-party guaranty. *Id.*, Ex. B. The agreement stated that, in the event EGSC failed to deliver the $1.25 million within the forty-five day period, EGSC would return the investment funds within two more banking days. The Lanes then collected almost all of their savings and wired $250,000 to EGSC. *Id.*, Ex. C. But Fortman and LaBant never invested the funds in EGSC. Instead, they used the $250,000 to further their own business endeavors.

At the end of the forty-five days, the Lanes received nothing. Two days later, they still received nothing. They made numerous requests for payment via phone and e-mail. See *id.*, Ex. G, H. In response to these inquiries, Fortman and LaBant represented to Plaintiffs that there were some "issues" with the transactions but that the money would be available "soon." *Id.* at ¶ 51. In December 2011, Fortman sent Plaintiffs $15,000 to placate them and continued to cite various excuses for non-payment of either the original investment funds or the promised $1.25 million return. On July 11, 2012, Richard e-mailed Fortman, advising him that Marie

> is feeling like we have been duped * * * I would like to believe that you Will come through for us as promised * * * * I would hope you are able to come up with some funds very soon to show us you are true to your word. I realize that you have had several obstacles to overcome but that has not put any money in the bank. As soon as you have some the funds available, and I do not care what amount, call me. We are now almost 11 months out. We can not afford to hold out much longer.

*Id.*, Ex. G. Fortman responded that same day, saying, "I'm a working diligently * * * to produce some money to ease this situation * * *[and] I can not believe all these delays and complication we have encountered." *Id.*, Ex. G. Two days later, Fortman sent Richard another e-mail, stating that "everything should wrap up," and they should "have wires out next week." *Id.* On July 19,

2012, Fortman again delayed, stating that the bank was causing more delays, and, "I don't think they will get the wires out until next week." *Id.* On July 24, 2012, Fortman again stated in an e-mail that they were still waiting for the bank to release the funds so they could send the wires. *Id.* On August 10, 2012, Fortman said there was "some progress this week with the bank on getting the funds released. We'll see what next week brings." *Id.* On February 8, 2012, Fortman delayed a lunch meeting with Richard, claiming he had the flu. *Id.* On April 6, 2013, he e-mailed Richard, thanking him for his patience and again saying, "[i]t will be very soon." *Id.* On May 6, 2013, Fortman stated, "I will reach by later in the week when I know more." *Id.* On May 25, 2013, LaBant e-mailed Richard, saying "it doesn't make sense to me to dwell on what hasn't happened, so I choose to roll up my sleeves, focus and work hard to achieve the successes that are at our fingertips. The more help and support for Steve [Fortman], the more likely and faster he will accomplish his deals, and the sooner other things will start to happen." *Id.* Roehm lied to the Lanes, telling them that Fortman and LaBant were truthful about all of these delays and intending to perpetuate Defendants' fraud. The Lanes never received more than the $15,000 wired to them in December 2011.

Plaintiffs filed a complaint on March 11, 2014 and an amended complaint ten days later, alleging fraud by Roehm, individually and as an employee and officer of Money Masters (Count I); fraud by Labant (Count II); violations of 15 U.S.C. §78j and 17 C.F.R. § 240.10b-5 by all Defendants (Count III); violations of Illinois Securities Law 815 ULCS 5/12 by all Defendants (Count IV); breach of fiduciary duty by Roehm individually and as an agent of Money Masters (Count V); unsuitability of Roehm individually and as an agent of Money Masters (Count VI); civil conspiracy by Roehm and Labant (Count VII); and negligence against all Defendants (Count VIII).

## II.    Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As previously noted, reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

Claims of fraud are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The heightened pleading standard serves three main purposes: "(1) protecting a defendant's reputation from harm; (2) minimizing strike suits and fishing expeditions; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (citation and internal quotation marks omitted). Accordingly, Rule 9(b) requires a plaintiff to "do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Specifically, a plaintiff must state the "who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (citation and internal quotation marks omitted).

## III. Analysis

Defendants move to dismiss all counts. The Court considers each count, beginning with the federal claim of securities fraud and turning later to the state claims.

### A. Federal Securities Fraud

#### 1. Security

LaBant argues that Plaintiffs fail to state a claim under Section 78j and 10b-5 of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78a *et seq.*, and 17 C.F.R. § 240.10b-5 ("Rule 10b-5") because there was no sale of a "security" as defined under the Act. Section 10(b) of the Securities Exchange Act of 1934 prohibits the "use or employ, in connection with the

purchase or sale of any security * * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).  SEC Rule 10b–5 implements § 10(b) by making it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made ... not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 CFR § 240.10b–5.  The Act defines a "security" to include any "investment contract" or "note" except a note with "a maturity at the time of issuance of not exceeding nine months * * *."  15 U.S.C. § 78c(a)(10).

LaBant's motion to dismiss and Plaintiffs' response dispute whether the agreement is a note falling within the nine-month maturity exception.  "[W]hen Congress spoke of notes with a maturity not exceeding nine months, it meant commercial paper, not investment securities." *Sanders v. John Nuveen & Co.*, 463 F.2d 1075, 1080 (7th Cir. 1972).  "When a prospective borrower approaches a bank for a loan and gives his note in consideration for it, the bank has purchased commercial paper.  But a person who seeks to invest his money and receives a note in return for it has not purchased commercial paper in the usual sense.  He has purchased a security investment." *Id.*  Plaintiffs allege that they invested their money in EGSC in exchange for a fixed return.  Their allegations plausibly suggest a note within the meaning of *Sanders*.  Accordingly, their investment does not fall within the Act's exception.

LaBant argues that Plaintiffs fail to allege a security even under this liberal reading of the Act because the agreement is not an "investment contract" within the meaning of *S.E.C. v. W.J.*

*Howey Co.*, 328 U.S. 293 (1946). This argument fails. If a financial instrument is either a note or an investment contract, it is a "security"; it need not be both. See 15 U.S.C. § 78c(a)(10); *Sanders*, 463 F.2d at 1080-81. Here, even if Plaintiffs have not plausibly alleged a note, they have plausibly alleged an investment contract. "[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party * * * " *Id.* at 298-99. The Seventh Circuit uses a "'horizontal' test of common enterprise, under which multiple investors must pool their investments and receive pro rata profits." *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir. 1984).

LaBant argues that the amended complaint does not allege an investment contract under *Howey* because it fails to allege (i) the participation of others in the same investment opportunity and (ii) a reasonable expectation of profits solely from the efforts of others. This argument, too, fails. First, the amended complaint expressly alleges that Defendants "conspired together and created a scheme to defraud *individuals, including Plaintiffs*, of their investment capital * * * " FAC at ¶ 19 (emphasis added). The language of the offer letter also plausibly suggests that others participated in the same investment opportunity; a generic form addressing an "Investor" states that the funds will be used to pay for "due diligence, administrative fees, legal fees, cost to reserve bank instrument, bank undertaking and the opening of a credit line facility, which will be leveraged to provide project funding and appropriate the return to the Investor." *Id.* When a corporation in the general business of "raising capital contributions for real estate financing," FAC, Ex. B, uses an offer letter addressed to a generic "Investor" to solicit funding for these kinds of activities, it is plausible that multiple individuals participate in the investment. Second, the corporate nature of the EGSC and its use of funds description make it plausible that the

Plaintiffs would earn $1.25 million from the efforts of others, not themselves. Plaintiffs' claim of federal securities fraud accordingly survives Defendants' motions to dismiss.

### 2. Timeliness

Defendants next argue that the amended complaint is time-barred. A statute of limitations is an affirmative defense that need not be anticipated in a complaint. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (citations omitted); see Fed. R. Civ. P. 8(c). Courts resolve statute of limitations defenses after the complaint stage with one major exception: "when the plaintiff pleads too much and admits definitively that the applicable limitations period has expired." *Barry Aviation Inc.*, 377 F.3d at 688.

The parties dispute the applicable limitations period. As an initial matter, Defendants incorrectly cite the previously applicable limitations period. Prior to 2002, a plaintiff had to file suit by the earlier of one year from discovery of the wrongdoing or three years from the improper transactions. See *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991). In 2002, however, Congress amended 28 U.S.C. § 1658, providing that a private 10b-5 action must be brought no later than the earlier of "(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b).

According to the complaint, Plaintiffs signed the investment agreement on August 19, 2011. The forty-five plus two-day period of the contract expired on October 12, 2011. Plaintiffs filed their first complaint in this Court on March 11, 2014. Plaintiffs' complaint thus falls within the five-year statue of repose. At issue is whether the Court should dismiss the complaint as time barred under the two-year statute of limitations.

For the Court to dismiss the complaint as untimely, it must find that the amended complaint "definitively" establishes that the two-year statute of limitations began to run earlier than March 11, 2012. *Barry Aviation Inc.*, 377 F.3d at 688. Under 28 U.S.C.A. § 1658(b)(1), the statute begins to run "(1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first." *Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010). The "facts constituting the violation" include scienter, "a mental state embracing intent to deceive, manipulate, or defraud." *Id.* (citation omitted). Thus, the two-year period does not begin necessarily with inquiry notice—the point when "the facts would lead a reasonably diligent plaintiff to investigate further." *Id.* at 651. It begins with discovery of the fraud, including scienter. *Merck* further explains that

> In determining the time at which "discovery" of those "facts" occurred, terms such as "inquiry notice" and "storm warnings" may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered "the facts constituting the violation," including scienter—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.

*Id.* at 653.

Defendants argue that the statute began to run on October 12, 2011, when the forty-five plus two-day window expired and EGSC had yet to pay. According to LaBant, Plaintiffs had actual knowledge of EGSC's non-payment by that date, and, according to Roehm and LaBant, EGSC's failure to perform created inquiry notice of fraud. Neither actual notice of non-performance nor inquiry notice of fraud, however, begin the clock. Only actual or reasonable discovery of fraudulent intent do. Roehm and Money Masters alternatively argue that the statute began to run on July 11, 2012, when Richard e-mailed Fortman saying Marie "is feeling like we

have been duped." FAC, Ex. G. Even if this e-mail "definitely" established discovery of scienter, triggering the statute of limitations, the filing of the complaint would still fall within the two-year period. *Barry Aviation Inc.*, 377 F.3d at 688. Nothing in the amended complaint "definitively" establishes that actual or reasonable discovery of scienter occurred before March 11, 2012, approximately five months after the forty-five plus two-day time window expired. Accordingly, Defendants have not established at this stage of the case that the amended complaint is time-barred.

### 3. Identification of a Subsection of Rule 10b-5

Roehm and Money Masters also argue that the amended complaint fails to state a claim because it alleges a violation of Rule 10b-5 generally rather than alleging a violation of Rule 10b-5(a), (b), or (c) specifically. They argue that a complaint must specify a subsection because the different subsections have distinct pleading requirements, citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994), and *SEC v. Benger,* 931 F. Supp. 2d 908 (N.D. Ill., 2013). *Central Bank of Denver, N.A.* is inapposite; it addressed an unrelated question—specifically, whether § 10(b) of the Securities Exchange Act of 1934 covers aiding and abetting liability. *Cent. Bank of Denver, N.A.*, 511 U.S. at 191. *SEC v. Benger* is persuasive precedent that did not hold, as Defendants argue, that a complaint's failure to allege a violation of subsection (a), (b), or (c) specifically is grounds for dismissal. The issue that Roehm and Money Masters present was not even before that court, as the SEC had alleged violations of all three subsections.

*Benger* does note, as Defendants argue, that several circuits (not including the Seventh Circuit) have held that the pleading requirements under the three subsections are different. In these circuits, "a defendant may only be liable as part of a fraudulent scheme based upon

misrepresentations and omissions under Rules 10b–5(a) or (c) when the scheme also encompasses conduct beyond those misrepresentations or omissions." *S.E.C. v. Benger*, 931 F. Supp. 2d at 913 (N.D. Ill. 2013) (citing *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.,* 655 F.3d 1039, 1057 (9th Cir. 2011); *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 177 (2nd Cir. 2005); *Public Pension Fund Group v. KV Pharmaceutical Co.,* 679 F.3d 972, 987 (8th Cir. 2012); *S.E.C. v. Brown,* 740 F. Supp. 2d 148, 172 (D.D.C. 2010)). At this stage, the Court need not rule on the extent to which the pleading requirements under subsections (a) and (c) extend beyond those of subsection (b). At a minimum, the amended complaint states a claim for a violation of Rule 10b-5(b) for the reasons explained below. See *infra* at part III(A)(4).

### 4. Allegations Regarding Specific Statements and Their Authors

To the extent that Plaintiffs allege a violation of Rule 10b-5(b) specifically, Roehm and Money Masters argue that the claim fails to satisfy the pleading requirements of Rule 10b-5 and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). To allege a violation of Rule 10b-5(b), a plaintiff must plead (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011). Under the PSLRA, a complaint must specify "each statement alleged to have been misleading." 15 U.S.C. § 78u-4 (b)(1)(B). It must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4 (b)(2)(A), that is, "to deceive, manipulate, or defraud," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). In determining whether there is a strong inference of scienter, a court must "accept[] all factual allegations in the complaint as true." *Id.* at 322. It must consider "whether *all* of the

facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* And it "must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 323-24. A complaint survives only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

Roehm and Money Masters argue that the amended complaint fails to allege specific statements by either party. They further argue that, to the extent Plaintiffs allege any specific statements, they fail to allege that these statements were misleading; that Defendants had the requisite scienter; or that Plaintiffs relied on them to their detriment.

The Court begins with the allegations against Roehm. First, Plaintiffs do specify a particular statement by Roehm; they allege that "[i]n an effort to induce Plaintiffs to invest in EGSC, Roehm represented to Richard and Marie that the investment with EGSC had the potential for an enormous return with almost no risk." FAC at ¶ 21. Defendants argue that this statement is not a statement of "material fact" within the meaning of Rule 10b-5; rather, it is an opinion. In *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), the Supreme Court held that management's opinion that a merger offered both fair and high value for minority shareholders could be factual in two senses relevant here: "reasons for directors' recommendations or statements of belief are factual as statements that the directors do act for the reasons given or hold the belief stated and as statements about the subject matter of the reason or belief expressed." *Virginia Bankshares*, 501 U.S. at 1092 (1991). In elaborating on the second point, the Court noted that

> conclusory terms in a commercial context are reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them

> misleading. Provable facts either furnish good reasons to make a conclusory commercial judgment, or they count against it, and expressions of such judgments can be uttered with knowledge of truth or falsity just like more definite statements, and defended or attacked through the orthodox evidentiary process that either substantiates their underlying justifications or tends to disprove their existence.

*Id.* at 1093.  In the case before it, for example, "whether $42 was 'high,' and the proposal 'fair' to the minority shareholders, depended on whether provable facts about the Bank's assets, and about actual and potential levels of operation, substantiated a value that was above, below, or more or less at the $42 figure, when assessed in accordance with recognized methods of valuation."  *Id.* at 1094.[2]  Here, Roehm's statement is factual in both senses of *Virginia Bankshares*.  Plaintiffs allege that Roehm disbelieved his own statement.  They also allege provable facts about the subject matter of the statement—specifically, that the investment offered no value rather than enormous value because Defendants planned to provide no return. Accordingly, Roehm's statement is plausibly a statement of fact.  Rule 10b-5 requires only one misleading statement of fact, and the PSLRA requires that a complaint specifically allege that misleading statement.  The alleged statement by Roehm alone satisfies both requirements.

Second, Plaintiffs allege that this statement was misleading, that Defendants had the requisite scienter, and that Plaintiffs relied on this statement to their detriment.  They allege that this representation by Roehm was "false when made and made for the sole purpose of inducing Plaintiffs to invest in EGSC."  *Id.* at ¶ 22.  They also allege that Defendants "had no intention of ever returning the Investment and had at all times intended to convert Plaintiffs' funds."  *Id.* at ¶

---

[2] *Virginia Banksharses* involved an alleged violation of Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9, which, similar to Rule 10b-5, prohibits statements that are "false or misleading with respect to any material fact" in the context of proxy statements.  Its holding is applicable by analogy to actions brought under Rule 10b-5.  See *Buchman v. Primerica Corp.*, 1992 WL 27290, at *4 (S.D.N.Y. Feb. 5, 1992).

45; see *id.* at ¶ 47.  These allegations not only satisfy Rule 10b-5's pleading requirements, but they also satisfy the PSLRA's requirement that a complaint's allegations give rise to a "strong inference" of scienter.  15 U.S.C. § 78u-4 (b)(2)(A).  Accepting all allegations as true and viewing the factual allegations collectively, *Tellabs, Inc.*, 551 U.S. at 322, the Court finds that the inference of scienter is strong.  When a financial adviser with at least twenty years of experience tells his clients that a contract yielding five times the initial investment within forty-five days involves almost no risk, it is plausible that he has intent to "deceive, manipulate, or defraud."  *Tellabs, Inc.* 551 U.S. at 313.  The risk-reward ratio is so extraordinary that Court finds it difficult to identify a "plausible, nonculpable explanation for the defendant's conduct," *id.*, nor do Defendants offer any.  Lastly, Plaintiffs allege detrimental reliance, stating, "[o]n or about August 19, 2011, upon the urging and assurances of Roehm and Fortman, Richard and Marie signed an agreement to invest $250,000.00 in EGSC and agreed to waive the third-party guaranty."  FAC at ¶ 32.

As for Money Masters, the Seventh Circuit has held that the doctrines of respondeat superior and apparent authority apply to suits brought under Rule 10b-5.  *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 708 (7th Cir. 2008).  The amended complaint alleges that Roehm is Money Masters' employee; in one location, the amended complaint also alleges that he is an officer.  Based on this alleged agency relationship,[3] it is plausible that Money Masters is liable for Roehm's statements under either one of these theories.

### 5. Particularity Under Rule 9(b)

---

[3] The alleged agency relationship is independent of the fraud itself and therefore need not be pled with the heightened particularity required by Rule 9(b).  See *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999).

Roehm and Money Masters also argue that the complaint fails to state a claim under Rule 9(b)'s heightened pleading standard. Actions brought under Rule 10b-5 must satisfy Rule 9(b), explaining the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Defendants argue in one sentence that "[n]o such allegations exist." Roehm and Money Masters' MTD at 8.

When a plaintiff files a fifty-four page complaint, attaching significant and detailed documentation in support of the claim, Defendants should hesitate to argue summarily that "[n]o such allegations exist." The factual allegations more than satisfy Rule 9(b). They state that in August through October 2011 (when), Labant, Roehm, and Money Masters (who), all of whom work in Illinois (where), persuaded Plaintiffs to invest $250,000 in EGSC (what) by falsely promising a $1.25 million dollar return on a $250,000 investment (how). Plaintiffs have provided significant factual detail by exhibiting Fortman's letter to Richard, offering the investment opportunity, Ex. A; the investment agreement between Plaintiffs and EGSC, Ex. B; the wire transfer of the $250,000, Ex. C; Richard's withdrawal of approximately $250,000 from other accounts shortly before the wire transfer, Exs. D, E; EGSC's wire transfers of $15,000 to placate Plaintiffs, Ex. F, see FAC at ¶ 44; at least nine e-mails from Fortman and Labant to Richard, Ex. G. Far from lumping Defendants together, these allegations and exhibits attribute specific representations to specific Defendants.

Second, Roehm and Money Masters argue that the allegations fail to meet Rule 9(b)'s heightened pleading standard because "Plaintiffs have generally lumped all of the Defendants together and have collected attributed (sic) the securities fraud claim to them in gross." Roehm and Money Masters MTD at 17. The amended complaint indicates otherwise. The amended complaint alleges that, of the three individuals, Roehm first approached the Lanes about the

16

investment, characterizing it as low-risk, high-reward. FAC at ¶¶ 20-22. He then persuaded them to meet with LaBant. *Id.* at 23. LaBant then explained EGSC's business and further details about the investment agreement—specifically that it was low-risk, high-reward, that it included the option of a guaranty, and that Plaintiffs' investment sum would be safely held in an escrow account. *Id.* at ¶¶24-27. Both Roehm and LaBant then introduced the Lanes to Fortman, who then provided the offer letter with the material terms and the investment agreement. *Id.* at ¶¶ 28-30, Exs. A, B. In light of these allegations and their attribution of specific words and conduct to individual Defendants, the amended complaint satisfies the heightened pleading standard required under Rule 9(b).

### B. State Claims

#### 1. Common Law Fraud (Count I)

Roehm and Money Masters argue that the amended complaint fails to plead fraud under state law. To state a claim for common law fraud, a plaintiff must allege (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (Ill. 1996).

Roehm and Money Masters first argue that Plaintiffs fail to allege fraud because they fail to attribute specific statements to either party. For the reasons set forth above, see *infra* part III(A)(4), the Court finds that Roehm's characterization of the investment as low-risk, high-reward is a statement plausibly attributable both to him and to Money Masters. See, *e.g.*, *Zahl v. Krupa*, 365 Ill. App. 3d 653, 660 (2d Dist. 2006) (noting that, as is true under federal law, a principal may be held liable for an agent's frauds where there is actual or apparent authority).

Second, Roehm and Money Masters argue that Roehm's assertion was a statement of opinion, not a false statement of material fact necessary to a state claim of fraud. To give rise to fraud, a misrepresentation must be "one of fact and not an expression of opinion. Statements regarding future events are considered opinions, not statements of fact * * * In determining whether a statement is one of fact or of opinion, we look to all the circumstances of the particular case." *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 388 (1st Dist. 1993) (citing, among others, *LaScola v. US Sprint Communications*, 946 F.2d 559 (7th Cir. 1991)). More specifically, we "focus on the circumstances surrounding the representation to determine whether the plaintiff may have justifiably relied on the opinion as though it were a statement of fact," considering "the relative sophistication of the parties," among other factors. *LaScola*, 946 F.2d at 568 (quotation marks omitted).

The amended complaint plausibly alleges that Roehm made a statement of fact, not a statement of opinion or a statement regarding future conduct. Roehm impliedly stated that the present value of the future income was "enormous." FAC at ¶ 21. In the context of this investment, "enormous" specifically meant $1.25 million discounted to the present. He also stated that the investment involved almost zero risk. *Id.* Considered in context, Roehm's statement is one of fact because it effectively states the expected value of the investment at the time Plaintiffs were considering the investment. Moreover, it is plausible that Plaintiffs justifiably relied on his statement as a statement of fact, particularly because he was their more sophisticated financial advisor.

Finally, Roehm and Money Masters argue that "there are no allegations that this advice was false." Roehm and Money Masters MTD at 10. Plaintiffs explicitly allege that this representation by Roehm was "false when made and made for the sole purpose of inducing

Plaintiffs to invest in EGSC." *Id.* at ¶ 22. They also allege that Defendants "had no intention of ever returning the Investment and had at all times intended to convert Plaintiffs' funds." *Id.* at ¶ 45; see *id.* at ¶ 47. Accordingly, the Court denies Roehm and Money Masters' motion to dismiss Count I.

### 2. Illinois Securities Laws (Count IV)

Roehm and Money Masters move to dismiss Count IV, arguing that Plaintiffs fail to state a claim under the Illinois Securities Laws because they failed to provide valid notice under the statute. Similar to Rule 10b-5, the Illinois Securities Laws make it illegal "to engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof," 815 ILCS 5/12(F), or to "employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly," 815 ILCS 5/12(I). Rescission is the only remedy available to the purchaser. See 815 ILCS 5/13(b); *Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 324 (7th Cir. 1983); *Kleban v. S.Y.S. Rest. Mgmt., Inc.*, 912 F. Supp. 361, 368-69 (N.D. Ill. 1995). To rescind the purchase, a purchaser must provide the seller notice within six months of learning that the sale is voidable. 815 ILCS 5/13(B).

Roehm and Money Masters raise various arguments, all directed against the validity of Plaintiffs' notice. The Court need not address any of these arguments. Rescission is a remedy available against a party to the contract, not third parties. The three parties to the investment contract were Richard Lane, Marie Lane, and EGSC, which is not named as a defendant in this action. Because Roehm, Money Masters, and LaBant were not parties to the contract, the

19

remedy of rescission is unavailable as to them. Accordingly, the amended complaint fails to state a claim against them under the Illinois securities laws.

### 3. Breach of Fiduciary Duty (Count V)

Roehm and Money Masters move to dismiss the breach of fiduciary duty claim against them, arguing that Plaintiffs inadequately allege the fiduciary relationship between Roehm and Plaintiffs. A fiduciary duty arises as a matter of law in certain types of relationships—for example, a lawyer-client relationship and a guardian-ward relationship. See *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992). It does not arise as a matter of law in an investment advisor-advisee relationship. *Id.* "When no fiduciary relationship exists as a matter of law, the plaintiff must plead facts showing that one party placed trust and confidence in the other so that the latter gained influence and superiority over the former." *Simon v. Wilson*, 291 Ill. App. 3d 495, 503 (1st Dist. 1997); see *In re Estate of Feinberg*, 2014 IL App (1st) 112219 (1st Dist. May 28, 2014). The relevant factors for determining whether a fiduciary relationship exists include:

> the degree of kinship between the parties; the disparity in age, health, mental condition and education and business experience between the parties; and the extent to which the "servient" party entrusted the handling of its business affairs to the "dominant" party and placed trust and confidence in the "dominant" party.

*In re Estate of Bontkowski*, 337 Ill. App. 3d 72, 78 (1st Dist. 2003) (citations omitted).

Plaintiffs plausibly plead a fiduciary relationship under this standard. They allege that Plaintiffs are in their sixties and seventies; that Roehm was their personal financial advisor for twenty years; that he handled substantially all of their financial planning and investments; that Plaintiffs entrusted him to manage a conservative portfolio for their retirement; that they had complete confidence in his advice and opinions; and that they trusted him with their financial well-being. FAC at ¶¶ 9-13. Based on these allegations, the Court denies Defendant's motion to dismiss this claim.

### 4.        Civil Conspiracy (Count VII)

Defendants move to dismiss Count VII, arguing that the amended complaint inadequately pleads a claim of civil conspiracy under Rule  9(b).  The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act.  *Redelmann v. Claire Sprayway, Inc.*, 375 Ill. App. 3d 912, 923, (1st Dist. 2007).  Claims of civil conspiracy premised on fraud implicate Rule 9(b)'s heightened pleading standard.  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Defendants argue that Plaintiffs inadequately allege each Defendant's agreement to participate in the fraud.  The amended complaint indicates otherwise.  It alleges that Roehm cultivated a business relationship with Fortmant and LaBant while working at Money Masters. "During the course of this business relationship, Roehm, Fortman and LaBant conspired together and created a scheme to defraud individuals, including Plaintiffs of their investment capital by promising certain guarantees of rates of return for use of investors' money in EGSC, with no intention of ever paying the investors any return on their investment." *Id.* at ¶ 19.  As a part of this scheme, Roehm told Plaintiffs that the investment was low-risk, high-reward.  Plaintiffs consequently met with LaBant, who further described the investment.  Roehm and LaBant then introduced Plaintiffs to Fortman, who sent them a letter confirming the details of the investment. Plaintiffs subsequently executed the agreement, after which Fortman and LaBant emailed Plaintiffs repeated excuses for delaying the payment.  Not only do these allegations expressly state that Roehm and LaBant each agreed to participate in the scheme, but the Court can further infer both Defendants' agreement from the extraordinary terms of the investment agreement

itself. When a financial advisor encourages his clients to purchase a $250,000 investment providing a $1.25 million return in forty five days with almost no risk, and when he personally introduces them to the sellers of the investment, the Court can infer that the financial advisor and the sellers are executing an agreement to dupe the investors. Lastly, Roehm's participation in the conspiracy as Money Masters' agent makes it plausible that Money Masters is also liable, nor do Defendants argue otherwise.

LaBant's additional argument that an agent cannot conspire with a principal misses the mark. As explained above, the amended complaint alleges that LaBant conspired with Roehm and Fortman, not EGSC.

### 5.    Negligence (Count VIII)

Roehm and Money Masters also move to dismiss Count VIII, which alleges negligence against all Defendants. More specifically, Count VIII alleges, in part, that Roehm and LaBant negligently and recklessly misrepresented the viability, security and return of the investment; advised Plaintiffs to invest in the security; failed to monitor the investment; and failed to tell Plaintiffs the truth about the investment. It further alleges that Money Masters breached its duty to Plaintiffs by failing to adequately supervise, monitor, and/or train Roehm.

First, Roehm and Money Masters argue that economic loss is not recoverable in tort actions. The economic loss rule, however, does not apply "where one intentionally makes false representations" of the kind alleged here. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 88 (Ill. Sup. Ct. 1982). Second, they again argue that no statements of material fact are attributable to either of them. For the same reasons set forth above, the Court finds at this stage that Roehm's assertion that the investment was low-risk, high reward plausibly constitutes a false statement of material fact attributable to Roehm and Money Masters. See *supra* part III(B)(1).

Third, they argue that Plaintiffs fail to state a claim for negligence because they do not specifically allege that Defendants were "careless or negligent in ascertaining the truth of any statements." Roehm and Money Masters MTD at 15. The amended complaint, however, does allege that both parties "[n]egligently misrepresent[ed] the viability, security, and return of the EGSC investment," alleging numerous facts in support of that allegation. FAC at ¶ 105(b). Perhaps Defendants mean to argue that Plaintiffs may not state a claim for negligent representation when they allege that Defendants made misrepresentations knowingly rather than carelessly. To the extent that Defendants make this argument, the argument is unpersuasive. Negligent and fraudulent misrepresentation have similar elements but require different mental states. *Doe v. Dilling*, 371 Ill. App. 3d 151, 180 (1st Dist. 2006). For a defendant to commit negligent misrepresentation, his mental state need not rise to the level of knowledge; carelessness or negligence alone will suffice. *Id.*; *Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 452 (Ill. Sup. Ct. 1989)). Thus, a knowing misrepresentation may form the basis for a claim of both negligent misrepresentation and fraud.

Finally, Roehm and Money Masters argue that Plaintiffs fail to state a claim for negligence because they fail to allege justifiable reliance; "ample opportunity existed to discover the truth" about the investment. Roehm and Money Masters MTD at 16. It is true that recovery for negligent misrepresentation is not possible "unless plaintiffs can prove justifiable reliance." *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 295 Ill. App. 3d 567, 575 (1st Dist. 1998). If "there were facts and circumstances present at the time the false representations were made sufficient to put the injured party upon his guard or to cast suspicion upon their truth, and he neglected to avail himself of the warning thus given, he will not afterwards be heard to complain, for the reason that his own conduct contributed to his injury." *Doe*, 371 Ill. App. 3d at

173 (quoting *Bundesen v. Lewis*, 368 Ill. 623, 633 (Ill. Sup. Ct. 1938)). However, "in cases where the parties do not have equal knowledge or means of knowledge of the facts represented * * * equity will afford relief on the ground of fraud and misrepresentation." *Id.* at 173-74 (quoting *Bundesen*, 368 Ill. at 633). The amended complaint plausibly alleges fraud, misrepresentation, and an information asymmetry between Plaintiffs—lay investors—and their long-time financial advisor. Accordingly, Plaintiffs state a claim of negligence against both Defendants.[4]

### C.      Unsuitability (Count VI)

Roehm and Money Masters move to dismiss Count VI, which claims "Unsuitability" without citing a particular statute or doctrine. More specifically, Count VI alleges that Roehm recommended investments that were unsuitable for Plaintiffs, given their investment goals. Defendants argue that no such claim exists under Illinois or federal law. Roehm and Money Masters MTD at 12 (citing *Bieganek v. Wilson*, 642 F. Supp. 768, 773 (N.D. Ill., 1986)). Plaintiffs are silent in response. A party waives an argument against dismissal by failing to make it. *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012). "The obligation to raise the relevant arguments rests squarely with the parties, because * * * [o]ur system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Id.* The Court accordingly dismisses Count VI.

---

[4] LaBant does not move to dismiss Count VIII's claim of negligence. However, the amended complaint problematically alleges that LaBant "had a duty to provide Plaintiffs with reasonable financial advice * * * " FAC at ¶ 104. LaBant was not a financial advisor with a duty to provide reasonable financial advice. However, in acting on behalf of the seller, EGSC, LaBant plausibly had a duty not to make material misrepresentations of fact regarding the investment product. The Court grants Plaintiffs leave to amend Count VIII if Plaintiffs wish to clarify their allegations as to LaBant.

## IV.    Conclusion

For the foregoing reasons, the Court grants Defendants' motions to dismiss [14, 17] with respect to Counts IV and VI.  Defendants' motions are denied with respect to all other counts. Plaintiffs are given until 2/12/2015 to file an amended complaint if they so desire.  This case is set for further status hearing on 1/29/2015 at 9:00 a.m.  The parties are directed to file a revised joint status report, including a proposed discovery plan, by 1/26/2015.

Dated: January 15, 2015

_____
Robert M. Dow, Jr.
United States District Judge